IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SENTIENT SENSORS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 19-1868 (MN) |
| | ) |
| CYPRESS SEMICONDUCTOR | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

Gary W. Lipkin, Alexandra D. Rogin, ECKERT SEAMANS CHERIN & MELLOTT, LLC, Wilmington, DE; Michael Shanahan, Scott H. Kaliko, KALIKO & ASSOCIATES, LLC, Wyckoff, NJ; Robert W. Morris, ECKERT SEAMANS CHERIN & MELLOTT, LLC, White Plains, NY – attorneys for Plaintiff

Thomas L. Halkowski, Ronald P. Golden III, FISH & RICHARDSON P.C., Wilmington, DE; David M. Hoffman, FISH & RICHARDSON P.C., Austin, TX – attorneys for Defendant

July 6, 2020
Wilmington, Delaware

*Maryellen Noreika*
**NOREIKA, U.S. DISTRICT JUDGE:**

Before the Court is the motion (D.I. 13) of Defendant Cypress Semiconductor Corporation ("Defendant" or "Cypress") to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court DENIES Defendant's motion.

## I.    BACKGROUND

Plaintiff Sentient Sensors, LLC ("Plaintiff" or "Sentient") is a New Mexico Limited Liability Corporation with a principal place of business in Albuquerque, New Mexico. (D.I. 1 ¶ 1; *see also* D.I. 6 ¶ 1). Defendant is a Delaware corporation with its principal place of business in San Jose, California. (D.I. 15 ¶ 2; *see also* D.I. 1 ¶ 3; D.I. 6 ¶ 3). On October 4, 2019, Plaintiff filed the present action, alleging that Defendant's Programmable System on a Chip ("PSoC") line of products infringe at least claim 1 of U.S. Patent No. 6,938,177 ("the '177 Patent"). (*See* D.I. 1 ¶¶ 13-31). Plaintiff also asserted claims of induced and contributory infringement of the '177 Patent. (*See id.* ¶¶ 32-47). On October 31, 2019, Plaintiff filed its First Amended Complaint, which added allegations regarding Defendant's knowledge of the '177 Patent as well as allegations that Defendant has willfully infringed and continues to willfully infringe the '177 Patent. (*See* D.I. 6 ¶¶ 19, 36 & 44; *see also id.* ¶ 22 (adding PSoC4 family processor model as accused product)). Defendant answered the complaint on December 16, 2019. (D.I. 10). The next day, on December 17, 2019, Defendant filed a motion to transfer this action to the Northern District of California, where Defendant is headquartered and where development work on the PCoS line of accused products purportedly still occurs. (*See* D.I. 13, 14, 15 & 16). Plaintiff opposes transferring this action and briefing on Defendant's motion was complete on February 10, 2020. (*See* D.I. 24 & 27).

1

## II. LEGAL STANDARD

District courts have the authority to transfer venue "[f]or the convenience of parties and witnesses, in the interest of justice, . . . to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "A plaintiff, as the injured party, generally ha[s] been 'accorded [the] privilege of bringing an action where he chooses.'" *Helicos Biosciences Corp. v. Illumina, Inc.*, 858 F. Supp. 2d 367, 371 (D. Del. 2012) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 31 (1955)). Plaintiff's choice of location in bringing the action "should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

In determining whether an action should be transferred under § 1404(a), the Third Circuit has recognized that:

> courts have not limited their consideration to the three enumerated factors in § 1404(a) (convenience of parties, convenience of witnesses, or interests of justice), and, indeed, commentators have called on the courts to "consider all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum."

*Jumara*, 55 F.3d at 879 (citation omitted). The *Jumara* court went on to describe twelve "private and public interests protected by the language of § 1404(a)." *Id.* The private interests include:

> plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Id.* at 879 (citations omitted). The public interests include:

> the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879-80.

The party seeking transfer bears the burden "to establish that a balancing of proper interests weigh[s] in favor of transfer." *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970). Courts have "broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer." *Jumara*, 55 F.3d at 883. The Third Circuit has held, however, that "unless the balance of convenience of the parties is strongly in favor of [the] defendant, the plaintiff's choice of forum should prevail." *Shutte*, 431 F.2d at 25.

### III.   DISCUSSION

As an initial matter, the Court addresses the threshold inquiry under § 1404(a) – *i.e.*, whether this action might have originally been brought in the transferee district. Defendant argues that this action could have originally be brought in the Northern District of California, which is where Defendant's regular and established place of business is located and also where development work on the accused products is ongoing.[1] (D.I. 14 at 4). There is no dispute that Defendant's principal place of business is in the Northern District of California. (D.I. 6 ¶ 3). Moreover, Plaintiff does not seriously dispute that the case could have originally been brought in that district, instead arguing only in a footnote that Defendant failed to offer facts to support this contention. (*See* D.I. 24 at 4 n.1). Indeed, the focus of Plaintiff's opposition is the private and public interest factors under *Jumara*. Thus, in the Court's view, the threshold inquiry under § 1404(a) is not seriously contested and the only issue before the Court is whether to exercise its discretion under § 1404(a) to transfer the case to that district. The Court addresses the *Jumara* factors in turn below.

---

[1] Defendant – a Delaware corporation – does not dispute that venue is proper in this District or that personal jurisdiction exists here. (*See* D.I. 10 ¶ 6).

### 1. Plaintiff's Forum Preference

This factor weighs against transfer. "It is black letter law that a plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request" – one that "should not be lightly disturbed." *Shutte*, 431 F.2d at 25 (internal quotations and citation omitted). "Assuming jurisdiction and proper venue, weight is given to plaintiff's choice because it is plaintiff's choice and a strong showing under the statutory criteria in favor of another forum is then required as a prerequisite to transfer." *Burroughs Wellcome Co. v. Giant Food, Inc.*, 392 F. Supp. 761, 763 n.4 (D. Del. 1975).

Defendant recognizes that Plaintiff's choice was to litigate in Delaware and concedes that "this choice weighs against transfer." (D.I. 14 at 5). Defendant nevertheless argues that this choice should be given less weight than it would if Plaintiff maintained a place of business in Delaware and conducted business in Delaware. (*Id.*). In Defendant's view, that Plaintiff has no "meaningful connection" to Delaware requires this Court to find that Plaintiff's preferred forum is entitled to less weight than it may otherwise be afforded. Plaintiff argues that its choice of forum is to be given "paramount consideration" regardless of its connections to Delaware. (D.I. 24 at 5).

The Court agrees with Plaintiff. Although Plaintiff's choice of forum is not dispositive, the Court will "not discount Plaintiff[s'] choice of forum based on a lack of physical ties to Delaware." *Abraxis Bioscience, LLC v. HBT Labs, Inc.*, No. 18-2019 (RGA), 2019 WL 2270440, at *2 (D. Del. May 28, 2019). This Court follows the reasoning in *Burroughs Wellcome*, in which Judge Stapleton found that the Third Circuit's rule that plaintiff's choice is of paramount consideration is "an across-the-board rule favoring plaintiff's choice of forum." 392 F. Supp. at 762-63; *see also VLSI Tech. LLC v. Intel Corp.*, No. CV 18-966-CFC, 2018 WL 5342650, at *4 (D. Del. Oct. 29, 2018). As Judge Stapleton noted, "assuming [plaintiff's choice] is to be given

4

some weight in cases where the plaintiff lives in the forum state, it is difficult to see why it should not also be given weight when the plaintiff lives in [another] state." *Burroughs Wellcome*, 392 F. Supp. at 763 n.4. This Court does not see a distinction here that justifies affording less weight to Plaintiff's choice of forum.[2] Plaintiff's choice to litigate in Delaware remains entitled to paramount consideration.

### 2. Defendant's Forum Preference

This factor favors transfer. Defendant's interest in having this case transferred to the Northern District of California is apparent.

### 3. Whether the Claims Arose Elsewhere

This factor is neutral. Defendant contends that this factor weighs in favor of transfer because (1) the design and development for the accused PSoC products occurred near Seattle, Washington, which is closer to the Northern District of California than this District, and (2) because development work on the accused products is ongoing at Defendant's headquarters in the Northern District of California. (D.I. 14 at 7; *see also* D.I. 16 ¶¶ 8-9). The Court acknowledges that these facts may weigh slightly in favor of transfer. *See In re Hoffman-La Roche, Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009); *see also Smart Audio Techs., LLC v. Apple, Inc.*, 910 F. Supp. 2d 718, 730 (D. Del. 2012) ("[T]o some extent, [infringement] claims ar[i]se where the allegedly infringing products [a]re designed and manufactured." (quotation marks and citation omitted) (alterations in original)). Yet the design and development here purportedly occurred in the Western District of Washington, which would suggest that the claims also arose in that district instead of the Northern District of California. Moreover, and perhaps more importantly, patent-

---

[2] In its reply brief, Defendant backed off its argument that Plaintiff's choice should be afforded less weight than if Plaintiff maintained a place of business here. (*See* D.I. 27 at 3-4).

5

infringement claims arise wherever alleged infringement has occurred. *See Treehouse Avatar LLC v. Valve Corp.*, 170 F. Supp. 3d 706, 710 (D. Del. 2016) (citing 35 U.S.C. § 271(a); *Red Wing Show Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).  It is noteworthy that neither Defendant nor its corporate declarant assert that the accused PSoC products are not used or sold in this District.  Indeed, as Plaintiff points out, Defendant's website provides contact information for customers in the Delaware area, thereby suggesting that sales of the accused products within this District may be expected.  (D.I. 24 at 6; *see also* https://www.cypress.com/about-us/sales-offices?page=4).  In its reply papers, Defendant ignores this point, instead focusing on the initial and ongoing development work on the accused products near and in the Northern District of California.  (D.I. 27 at 4).  Yet selling or offering to sell the accused products in Delaware would constitute an alleged act of infringement within the meaning of § 271(a), thereby giving rise to a claim that arises in this District.  Therefore, the Court concludes that this factor is neutral.

### 4. Convenience of the Parties as Indicated by Their Relative Physical and Financial Condition

This factor is neutral.  Determining convenience of the parties requires the Court to consider:  (1) the parties' physical location; (2) the associated logistical and operational costs to the parties in traveling to Delaware – as opposed to the proposed transferee district – for litigation purposes; and (3) the relative ability of each party to bear these costs in light of its size and financial wherewithal.  *See MEC Resources, LLC v. Apple, Inc.*, 269 F. Supp. 3d 218, 225 (D. Del. 2017) (citing *Memory Integrity, LLC v. Intel Corp.*, No. 13-1804 (GMS), 2015 WL 632026, at *4 (D. Del. Feb. 13, 2015) (internal quotations omitted)).  Because Defendant is a Delaware corporation, it "must prove that litigating in Delaware would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings Inc. v. Asus Comput. Int'l, Inc.*, 964 F. Supp. 2d

320, 325 (D. Del. 2013) (alteration in original) (internal quotation marks and citation omitted); *see also Universal Secure Registry, LLC v. Apple, Inc.*, No. 17-585 (CFC) (SRF), 2018 WL 4502062, at *3 (D. Del. Sept. 19, 2018) ("When a party accept[s] the benefits of incorporation under the laws of the State of Delaware, a company should not be successful in arguing that litigation in Delaware is inconvenient, absent some showing of a unique or unexpected burden." (internal quotation marks and citation omitted) (alteration in original)).

Here, Defendant argues that transferring to the Northern District of California would be more convenient for "the reasons discussed throughout [Defendant's] brief." (D.I. 14 at 7). Given that Defendant is incorporated in Delaware, it must demonstrate that litigating here "would impose a unique or unusual burden on [its] operations." *Graphics Props. Holdings*, 964 F. Supp. at 325. Making a reference to the contents of its brief in general fails to make the requisite showing that litigating here presents a unique or unusual burden on Defendant. Nevertheless, although Defendant did not expend the effort of articulating its "reasons" and tying them to this *Jumara* factor, the Court assumes the reasons are that Defendant is headquartered in the Northern District of California, that initial development work occurred near that district and ongoing development work still occurs within that district and, thus, it would be a burden to produce relevant documents and witnesses in Delaware when they could potentially be produced more easily in the Northern District of California. Even if these are reasons that make litigating in that district more convenient for Defendant, the Court is unable to conclude that Defendant cannot shoulder the burden of litigating here instead or that this would present some unique hardship on Defendant.[3] In its opposition, Plaintiff asserts that Defendant's "size, financial resources, and status as a Delaware

---

[3] Defendant made no attempt to show that litigating here would present a unique or unexpected hardship on its operations (*e.g.*, diverting resources, etc.) so how could the Court conclude otherwise.

7

corporation . . . negate any assertion that it is actually inconvenienced by having to litigate in Delaware." (D.I. 24 at 7). Defendant does not dispute this, instead arguing that whether Defendant has deep pockets is "irrelevant" and that it would be more burdensome to litigate "thousands of miles" from the parties' primary locations. (D.I. 27 at 5). The Court disagrees that Defendant's financial status is irrelevant to the § 1404(a) analysis and, although the Court acknowledges that litigation carries an inherent burden, Defendant has failed to show it would suffer a unique burden under the facts here. This conclusion is bolstered by the fact that the Court anticipates the majority of discovery will likely occur in California or in another place agreed upon by the parties and that this litigation is unlikely to proceed through to a trial (as is true for most cases). *See, e.g.*, *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 15-1168 (LPS) (CJB), 2016 WL 8677211, at *7 (D. Del. Sept. 23, 2016) ("[A]ny additional inconvenience to [Defendant's] employee witnesses in traveling to Delaware for pre-trial or trial proceedings is diminished by the fact that the amount of such travel is not likely to be large – particularly if the case (as most do) resolves prior to trial."); *Graphics Props. Holdings*, 964 F. Supp. 2d at 328 ("[A]s a practical matter, regardless of the trial venue, most of the discovery will take place in California or other locations mutually agreed to by the parties."); *see also Intellectual Ventures I LLC v. Altera Corp.*, 842 F. Supp. 2d 744, 757 (D. Del. 2012) ("It is overwhelmingly likely, however, that any federal civil litigation – including the instant case – will ***not*** actually go to trial." (emphasis in original)), *mandamus denied sub nom. In re Altera Corp.*, 494 F. App'x 52 (Fed. Cir. 2012).

Defendant also argues that litigating in the Northern District of California would be more convenient for Plaintiff. Defendant asserts (and Plaintiff does not dispute) that Plaintiff and Plaintiff's members – one of whom is the inventor of the '177 Patent – have "no apparent ties to the State of Delaware." (D.I. 14 at 7). The Northern District of California may appear marginally

8

more convenient for Plaintiff than this District, but Plaintiff "has chosen to litigate this matter in Delaware and that choice signals its belief that litigation here is most convenient for it, for whatever its reasons." *Tessera, Inc. v. Sony Elecs., Inc.*, No. 10-838 (RMB) (KW), 2012 WL 1107706, at *4 (D. Del. Mar. 30, 2012).  Thus, this factor is neutral.

### 5. Convenience of the Witnesses

This factor is neutral.  This factor carries weight "only to the extent that the witnesses may actually be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879; *see also VLSI*, 2018 WL 5342650, at *7 (citing *Smart Audio*, 910 F. Supp. 2d at 732 (noting that this factor applies only insofar as "a witness actually will refuse to testify absent a subpoena")).  "[W]itnesses who are employed by a party carry no weight" because "each party is able, indeed, obligated to procure the attendance of its own employees for trial." *Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp. 2d 192, 203 (D. Del. 1998).  "[T]he Court should be particularly concerned not to countenance undue inconvenience to third-party witnesses[] who have no direct connection to the litigation." *Intellectual Ventures I*, 842 F. Supp. 2d at 757.

Defendant asserts that it "is currently unaware of any witnesses who would be unavailable for a trial in Delaware." (D.I. 14 at 8).  Nevertheless, according to Defendant, relevant witnesses from both parties are located closer to the Northern District of California than they are to this District.  (*Id.*).  For Defendant, although not specified, the Court assumes that the relevant witnesses referenced here are Defendant's employees.  Indeed, Defendant then goes on to explain that its "relevant personnel" are located in the San Jose headquarters or offices outside of Seattle. (*Id.*; *see also* D.I. 16 ¶¶ 3 & 8-9).  As for Plaintiff's witnesses, Defendant asserts that Plaintiff and its two operators (and thus also the inventor of the '177 Patent) are in New Mexico, which is closer to the Northern District of California than here.  (D.I. 14 at 8).  Finally, Defendant notes that the

9

prosecuting firm for the '177 Patent – a potential third-party witness – is located in California. (*Id.* at 8-9).[4]  In Defendant's view, all potential witnesses are closer to the Northern District of California than to this District, thereby "slightly" weighing in favor of transfer. (*Id.* at 9).

Plaintiff disagrees that the Northern District of California is more convenient for the witnesses relevant to this *Jumara* factor, arguing that there are likely to be third-party witnesses as a result of Defendant's recent acquisition by Infineon AG. (D.I. 24 at 9). Those witnesses, according to Plaintiff, are located in Germany, which is closer to Delaware than to the Northern District of California. (*Id.*). Plaintiff also asserts that there is likely to be discovery sought from the government as the '177 Patent resulted from an agreement between Plaintiff and the United States Air Force. (*Id.*). According to Plaintiff, that discovery "likely will be submitted to military legal representatives and approved by the Pentagon in the Washington, D.C. area." (*Id.*). Defendant argues that Plaintiff is merely speculating that third-party Infineon witnesses will be relevant to the present dispute, but Defendant does not address Plaintiff's argument regarding potential discovery from the government. (D.I. 27 at 5-6).

Despite the various arguments advanced by each party, neither Defendant nor Plaintiff has identified any witness who would be unavailable for trial in Delaware, which is the paramount consideration under this *Jumara* factor. *See Jumara*, 55 F.3d at 879. As to the third-party witnesses who are outside the subpoena power of this Court – a consideration only relevant to ensure appearance at trial – there is no evidence in the record that these witnesses would not appear for trial without a subpoena (or that they would voluntarily appear in the Northern District of California but not Delaware). *See Intellectual Ventures I*, 842 F. Supp. 2d at 758 ("If this case

---

[4]   That firm appears to be in Los Angeles – *i.e.*, the Central District of California. (*See* D.I. 15, Ex. 5 at pg. 28 of 192).

10

turns out to be one of the statistically rare cases to go to trial, it is always possible, if not likely, that third-party fact witnesses with material, non-cumulative evidence will voluntarily appear at trial."). Therefore, the Court ultimately concludes that this factor is neutral.

### 6. Location of Books and Records

This factor slightly favors transfer. *Jumara* instructs the Court to give weight to the location of books and records necessary to the case only "to the extent that the files [and other evidence] could not be produced in the alternative forum." *Jumara*, 55 F.3d at 879. Defendant argues that this factor favors transfer because "substantially all" of Defendant's relevant books and records "are located, or can be made available, in the Northern District of California, including electronic copies of materials" from its offices near Seattle, Washington. (D.I. 14 at 9; *see also* D.I. 16 ¶ 7). Defendant also asserts that Plaintiff's documents are "likely" to be closer to California than Delaware. (D.I. 14 at 9). In its opposition, Plaintiff argues that this factor is neutral, focusing on the fact that Defendant has failed to demonstrate that any documents or other evidence could not be produced here or that some evidence is "found exclusively" in the Northern District of California. (D.I. 24 at 10).

Although the Court agrees that Defendant has failed to demonstrate some evidence could not be produced here, Defendant has shown that much of the relevant evidence is either located in or more easily produced in the Northern District of California. "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). That being said, the Third Circuit has instructed that the relevant consideration here is whether the evidence could not be produced in the competing fora. *See Jumara*, 55 F.3d at 879. With the state of technology in litigation today

11

and the ease with which documentary evidence can be produced electronically, the Court finds that this factor – although favoring transfer – should be afforded minimal weight. *See, e.g.*, *Blackbird Tech LLC v. E.L.F. Beauty, Inc.*, No. 19-1150-CFC, 2020 WL 2113528, at *4 (D. Del. May 4, 2020); *Intellectual Ventures I*, 842 F. Supp. 2d at 759. Therefore, this factor weighs in favor of transfer, but only slightly.

### 7. Enforceability of the Judgment

This factor is neutral as judgments from this District and the Northern District of California would be equally enforceable.

### 8. Practical Considerations

This factor is neutral. The Court must consider "practical considerations that could make the trial easy, expeditious, or inexpensive." *Jumara*, 55 F.3d at 879. Defendant argues that this factor weighs in favor of transfer because Defendant is headquartered in the Northern District of California, Plaintiff is headquartered nearby in New Mexico and "[c]osts in both money and time lost from professional and personal responsibilities would be significantly greater than would be incurred if trial were held in the Northern District of California" (D.I. 14 at 10). In response, Plaintiff argues that Defendant is simply repeating its arguments for other factors and that "these considerations should not be double-counted." (D.I. 24 at 11). The Court agrees with Plaintiff. Defendant's contentions "have been raised, in the same way, as to other *Jumara* factors, and so the Court will not 'double-count' them here." *Elm 3DS Innovations LLC v. SK Hynix, Inc.*, No. 14-1432 (LPS) (CJB), 2015 WL 4967139, at *11 (D. Del. Aug. 20, 2015). Therefore, because there is no broader public benefit to this case proceeding in this Court versus the Northern District of California (or vice versa), this factor is neutral. *See W.R. Berkley Corp. v. Niemela*, No. 17-32

12

(GMS), 2017 WL 4081871, at *4 (D. Del. Sept. 15, 2017) (finding factor to be neutral when "neither party addresse[d] the broader public costs of proceeding in one district or the other").

### 9. Relative Administrative Difficulty Due to Court Congestion

This factor is neutral. The Court takes judicial notice of the most recent Judicial Caseload Profiles,[5] as of December 31, 2019, which indicate that, in the District of Delaware, the median length of time between filing and trial for civil cases is 30.9 months and the median length of time between filing and disposition in civil cases is 5.3 months. In the Northern District of California, the median lengths of time in civil cases between filing and trial and filing and disposition are 22.3 months and 8.5 months, respectively. The December 31, 2019 profile also indicates that there are 646 cases pending per judgeship in the District of Delaware, whereas there are 854 cases pending per judgeship in the Northern District of California. These statistics counsel the Court that the two districts are similarly congested and, thus, this factor is neutral.

### 10. Local Interest in Deciding Local Controversies at Home

This factor is neutral. Defendant argues that this factor strongly favors transfer because "Delaware has no other localized interest in this dispute" other than in having Delaware corporations – like Defendant – resolve their disputes in Delaware courts. (D.I. 14 at 11). Defendant further contends that California has "a paramount interest" in resolving this dispute because Defendant and its employees generate significant revenue within California. (*Id.*). In response, Plaintiff asserts that Defendant is a "multinational company with thousands of employees worldwide" and, thus, Defendant is not a "local" company in the Northern District of California. (D.I. 24 at 12). Therefore, according to Plaintiff, this factor is neutral.

---

[5] The December 2019 statistics for the District Courts of the United States can be found at: https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile1231.2019.pdf.

13

The Court ultimately agrees with Plaintiff. "[I]n patent infringement cases the local interest factor is typically neutral 'because patent issues do not give rise to a local controversy or implicate local interests.'" *Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 797 F. Supp. 2d 472, 486 (D. Del. 2011) (quoting *TriStrata Tech., Inc. v. Emulgen Labs., Inc.*, 537 F. Supp. 2d 635, 643 (D. Del. 2008)). Although Defendant does have connections with the Northern District of California (*e.g.*, employees there and generating revenue within the state), the Court finds it relevant that Defendant is a global company with a significant number of employees throughout the world.[6] This suggests that Defendant is not a "local" company in the Northern District of California such that local interests are, in fact, implicated here. *See, e.g.*, *Rosebud LMS, Inc. v. Salesforce.com, Inc.*, No. 17-1712-CFC, 2018 WL 6061343, at *7 (D. Del. Nov. 20, 2018) ("Salesforce, with thousands of employees in dozens of countries, is not a 'local' company; and its dispute with Rosebud, which does not reside in California, is not a 'local controversy' in the Northern District."). Thus, in the Court's view, this factor is neutral.

11. Public Policies of the Fora

The parties contend that this factor is neutral. In the Court's view, however, this factor weighs slightly against transfer because Defendant is a Delaware corporation and public policy encourages Delaware corporations to resolve disputes in Delaware courts. *See, e.g.*, *Graphics Props. Holdings Inc.*, 964 F. Supp. 2d at 331 (even where only one party is a Delaware corporation, public policy encouraging Delaware corporations to resolve disputes in Delaware weighs against transfer). There is no similar argument for the Northern District of California as neither party is a California company.

---

[6] Defendant does not dispute that it is a multinational company with thousands of employees across the world. (*See* D.I. 27 at 7-8).

        12.      <u>Familiarity of the Trial Judge with the Applicable State Law in Diversity Cases</u>

The parties agree that this factor is neutral as Plaintiff's claims arise under federal patent laws and the familiarity of the respective districts with state law is not applicable.

        13.      <u>Balancing the Private and Public Factors</u>

After balancing the twelve *Jumara* factors, the Court concludes that this case should not be transferred to the Northern District of California. Eight factors are neutral, and two factors weigh in favor of transfer, with one favoring transfer only slightly. Two factors weigh against transfer, including Plaintiff's choice of this forum, which is to be given paramount consideration. Looking at the factors together and giving each its appropriate weight, Defendant has failed to meet the heavy burden of showing that the *Jumara* factors weigh strongly in favor of transfer.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, Defendant's motion to transfer the case to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a) is DENIED. An appropriate order will follow.